UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| AINAR WILLIAM ELLIS, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. )<br>_____) | Case No. 1:13-cv-870<br><br>Honorable Phillip J. Green<br><br>**OPINION** |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim supplemental security income (SSI) benefits. On April 30, 2010, plaintiff filed his application for SSI benefits,[1] alleging an onset of disability of August 1, 1999. (A.R. 163-68). SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the

---

[1]April 30, 2010, is a protective filing date. "Protective filing date" is the term used for the first time an individual contacts the Social Security Administration about filing for benefits. *See* http:// www.ssa.gov/glossary.htm (last visited Nov. 14, 2014). A protective filing date allows an individual to have an earlier application date than the date the signed application is actually filed. *Id.*

month after the application for SSI benefits is filed. Thus, May 2010, is plaintiff's earliest possible entitlement to SSI benefits.[2]

Plaintiff's claim for SSI benefits was denied on initial review. On March 29, 2012, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 31-79). On April 20, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-26). On June 13, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 11). Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ's factual finding regarding plaintiff's RFC failed to include all plaintiff's limitations and is not supported by substantial evidence; and

2. The ALJ failed to give plaintiff the benefit of a higher age category in a "borderline age situation."

(Statement of Errors, Plf. Brief at 2, docket # 12).[3] The Commissioner's decision will be affirmed.

---

[2] Plaintiff also filed an application for disability insurance benefits (DIB). (A.R. 156-62). His disability insured status expired on December 31, 2002. It was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before December 31, 2002. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff has now abandoned any claim that he was disabled on or before December 31, 2002. (Plf. Brief at 3 n.1). Thus, there is no claim for DIB benefits at issue in this lawsuit.

[3] On November 12, 2013, the court entered its order establishing the schedule and page limitations for the briefs in this case. (docket # 10). The order expressly stated that "[i]nitial briefs

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see*

---

may not exceed 20 pages without leave of court" and that reply briefs are "not to exceed five pages." (*Id.*). Plaintiff filed a 22-page initial brief without first obtaining leave of court, and later compounded the error by filing a 9-page reply brief, which was almost twice the length permitted under the court's order. Plaintiff's attorney is advised that the court will strike any future brief which exceeds applicable page limitations.

*Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after April 30, 2010. (A.R. 17). Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine status post surgeries in 1997 and 1998, depressive disorder, NOS, cognitive disorder, NOS, lumbago, reflex sympathetic dystrophy syndrome, right arm. (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He can stand/walk up to six hours and sit up to 6 hours in an 8-hour shift. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he cannot climb ladders, ropes or scaffolds. He can occasionally engage in overhead reaching with the right upper extremity. He is limited to no more than occasional flexion, extension, rotation or side-to-side bending of the head or neck in any direction greater than 45 degrees from a forward-looking position. He is limited to no more than occasional ambulation over uneven terrain or rough or hard [surfaces] such as cement. He is limited to simple, unskilled work. He can engage in occasional contact with the general public, coworkers and supervisors. He must be afforded the option to alternate between sitting and standing as needed throughout the workday.

(A.R. 20). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (A.R. 20-24). The ALJ found that plaintiff was unable to perform any past relevant work. (A.R. 24). Plaintiff was 52-years-old on the date he filed his applications for benefits, and 54-years-old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for SSI benefits, plaintiff was classified as an individual closely approaching advanced age. (A.R. 24). Plaintiff has limited education and is able to communicate in English. (A.R. 24). The transferability of job skills was not material to a disability determination. (A.R. 24). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 3,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 72-75). The ALJ found that this constituted a significant number of jobs. Using Rule 202.11 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 25-26).

**1.**

Plaintiff argues that the ALJ's factual finding regarding his RFC is not supported by substantial evidence. Specifically, he argues that the ALJ's factual finding "fail[ed] to account for" all plaintiff's "mental work-related limitations"; the ALJ failed to explain what weight he gave to a global assessment of functioning (GAF) score provided by an examining psychologist; and the ALJ's finding limiting plaintiff to simple, unskilled work was "inadequate to encompass the true nature" of plaintiff's memory, concentration, persistence, and pace restrictions. Further, he argues that the ALJ's factual finding regarding his RFC did not include a "function-by-function" analysis and "failed to include" all his physical limitations. (Plf. Brief at 2-16; Reply Brief at 2-6).

Plaintiff's arguments challenging the ALJ's factual finding regarding his RFC do not provide a basis for disturbing the Commissioner's decision.

Plaintiff's argument that the ALJ's finding regarding his RFC "failed to adequately provide for" moderate limitations in concentration, persistence, and pace is meritless. Plaintiff conflates the ALJ's factual findings at distinct stages of the sequential analysis, ignores the ALJ's credibility determination, and disregards the more carefully calibrated nature of the ALJ's factual finding regarding his RFC.

The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis.[4] *See* 20 C.F.R. § 416.920(a)(4)(iii). This step of the sequential analysis regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It governs "the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity

---

[4] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). A claimant has the burden of demonstrating that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 472 (6th Cir. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

The ALJ determined that plaintiff's impairments did not meet or equal the requirements of any listed impairment:

> Although the claimant has "severe" impairments, they do not meet the criteria of any listed impairment described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician has reported findings equivalent in severity to the criteria of any listed impairment, including Sections 1.00 and 12.00 of Appendix 1.
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 or 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. The claimant reported that he is able to prepare simple meals, some household chores and mow the lawn (he utilizes a riding mower at 15 minute intervals). The claimant also admitted that he watches television, but relies on his wife to assist with shopping and money management (Exhibits 5E; 10F).
>
> In social functioning, the claimant has moderate difficulties. The claimant testified that he angers easily, but reported that he talks to others on the phone a couple of times a week (Exhibit 5E/5). And while he informed Dr. Pekrul that he was engaging in isolative behaviors, he presented as friendly and socially appropriated during the interview (Exhibit 10F/3).

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant alleged that his memory has worsened since his accident. During the consultative examination, he demonstrated only minor difficulties in his immediate memory and his past memory appeared to be intact; but in terms of his recent memory, he was unable to recall any items after three minutes had elapsed (Exhibit l0F/4). The claimant also reported that he has difficulty following both written and spoken instructions (Exhibit 5F/6).
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In that regard, there are no repeated episodes of decompensation. There is not a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause decompensation and there is not a current history of one or more years of inability to function outside a highly supportive living arrangement. Thus, in this case, the evidence fails to establish the presence of the "paragraph C" criteria for listings 12.02 or 12.04.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(A.R. 18-20). Plaintiff had "mild" limitations in activities of daily living, "moderate" limitations in social functioning, "moderate" limitations in concentration, persistence, and pace, and no episodes of decompensation of extended duration. Thus, he did not satisfy the Part B severity requirements of the listings and he did not fulfill the exacting requirements of the "paragraph C criteria." *Charlton v. Commissioner*, No. 1:11-cv-992, 2013 WL 5806169, at * 8 (W.D. Mich. Oct. 29, 2013).

Plaintiff is not challenging the ALJ's finding that he did not meet or equal the requirements of any listed impairment.  Rather, he is attempting to take a portion of the ALJ's finding with regard to the paragraph B criteria out of context and substitute it for the ALJ's factual finding that he retained the RFC for a limited range of light work, which involved "simple, unskilled work," and "occasional contact with the general public, coworkers, and supervisors."  (A.R. 20).  It is well established that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment." *See Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)).  RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments."  *Id.* at 4; *see Smith v. Colvin*, No. 3-13-cv-570, 2014 WL 2159122, at * 4 (W.D.N.C. May 23, 2014); *Bordeaux v. Commissioner*, No. 3:12-cv-1213, 2013 WL 4773577, at *12-13 (D. Or. Sept. 4, 2013); *Collier v. Commissioner*, No. 1:11-cv-1144, 2013 WL 4539631, at * 5-6 (W.D. Mich. Aug. 27, 2013); *Reynolds v. Commissioner*, No. 10-110, 2011 WL 3897793, at * 3 (E.D. Mich. Aug. 19, 2011).  The ALJ's findings at earlier steps in the sequential analysis do not undermine his findings that plaintiff retained the RFC "simple, unskilled work," which involves occasional contact with the general public, coworkers, and supervisors.  (A.R. 20).  The court finds that the ALJ's factual finding that plaintiff retained the RFC to perform a limited range of light work is supported by more than substantial evidence.

Plaintiff argues that the Commissioner's decision should be overturned because it does not include a "function-by-function" analysis under SSR 96-8p.  Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related

abilities on a function-by-function basis." 1996 WL 374184 at *1. The Sixth Circuit has recognized, however, that, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Commissioner*, 30 F. App'x 542, 547 (6th Cir. 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548 (citation omitted); *see also Rudd v. Commissioner*, 531 F. App'x 719, 729 (6th Cir. 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports h[is] conclusions"). The ALJ discussed the evidence of record at length and explained how it supported his factual finding regarding plaintiff's RFC. (A.R. 20-24).

RFC is the most, not the least, a claimant can do despite his impairments.[5] 20 C.F.R. § 416.945(a)(1); *see Kornecky v. Commissioner*, 167 F. App'x 496, 499 (6th Cir. 2006). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, 476 F. App'x 618, 621 (6th Cir. 2012).

---

[5]The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

Because SSI benefits are not awarded retroactively for months prior to the application for benefits, the relevant time period runs from the date plaintiff filed his application for SSI benefits, April 30, 2010, through April 20, 2012, the date of the ALJ's decision. The vast majority of the evidence that plaintiff presented in support of his claim for SSI benefits was generated well outside the relevant time period. (*See, e.g.*, Exhibits 1F-7F, 12F, A.R. 285-329, 380). By way of background, plaintiff was injured in a motor vehicle accident in 1997. (A.R. 41-42). In September 1997, he had a cervical spinal fusion surgery, which was followed by a laminectomy procedure in June 1998. (A.R. 320-21). X-rays taken of plaintiff's cervical spine on March 2, 1999, showed status-post "anterior spinal fusion at the C6-C7 region showing either advanced healing of the bone graft or a completely healed bone graft, without acute abnormality." (A.R. 287, 292-94). The ALJ noted that "treatment records indicate that the claimant's treatment, over a span of approximately nine years, was minimal, consisting primarily of medication management, and mostly unrelated to the complaints he alleged in connection with his application for disability." (A.R. 21-22).

The objective evidence established plaintiff's remote history of back surgery and mild degenerative changes from C4 through C6. (A.R. 349). On August 19, 2010, Michael Jacobson, D.O., performed a consultative examination. (A.R. 351-54). Plaintiff stated that he completed the 12th grade and could read and write. He was formerly employed in construction. His gait was normal. He did not use a cane. There was no sign of muscle wasting in his extremities. His grip strength was "normal" and he had "full dexterity." Plaintiff's muscle strength was intact, but mildly weakened in the bilateral upper extremities. (*Id.*).

On September 23, 2010, plaintiff received a consultative mental status evaluation performed b Kathryn Pekrul, a limited license psychologist. (A.R. 355-59). Plaintiff had no history

of hospitalization for psychiatric symptoms. (A.R. 356). He stated that he received the following prescriptions from Gary Gulish, D.O., his primary care physician: "Amerax, Celebrex, lisinopril and Celexa." (A.R. 356). Plaintiff "arrived on time for the scheduled appointment and drove himself." (A.R. 357). He retained a valid driver's license. He was "independent in his daily functioning." (A.R. 357). He was "fully oriented." His stream of mental activity was intact. Pekrul gave plaintiff a GAF score of 50. She offered a diagnosis of a depressive disorder, NOS and a cognitive disorder, NOS. (A.R. 358).

Psychologist Bruce Douglass reviewed the evidence and offered his opinion that plaintiff was capable of performing "routine, 2-step tasks on a sustained basis." (A.R. 89-91). Saadat Abasi, M.D., reviewed the medical evidence and offered his opinion that plaintiff was capable of performing a limited range of light work. (A.R. 88-89).

On February 7, 2011, plaintiff told Dr. Gulish that he had been in a car accident on February 4, 2011, and that he wanted an x-ray of his neck. (A.R. 363). The x-rays of plaintiff's cervical spine showed the post fusion changes at C6-7, with no acute abnormality. (A.R. 371). The x-rays of his thoracic spine were normal. (A.R. 370).

On December 6, 2011, plaintiff appeared as a new patient at Metro Health. (A.R. 405). Robert Selfe, D.O., conducted the intake interview and examination. Plaintiff gave a history of lumbago stemming from falling from a tree 30 years earlier and chronic neck and radicular symptoms and RSD in his right upper extremity stemming from the 1997 accident. (A.R. 405). Over the past several years he had "waxing and waning neck and low back pain" and that he "typically only used NSAIDS" for pain treatment. (A.R. 405). Plaintiff was "alert, oriented to person, place, and time." He had normal sensation to vibration and touch, but his deep tendon

reflexes were absent in the right upper and lower extremity and normal on the contralateral side (A.R. 406). His strength was 4+ out of 5 on the right upper extremity and 4+ out of 5 on the right lower extremity. Dr. Selfe found no evidence of clubbing, cyanosis, or edema. On January 26, 2012, Dr. Selfe found that plaintiff's strength was "5 out of 5 and symmetrical." (A.R. 392). His gait and deep tendon reflexes were "normal." (A.R. 392).

Plaintiff argues that the ALJ failed to adequately address the relatively low GAF score provided by Psychologist Pekrul. This argument does not provide a basis for disturbing the Commissioner's decision. It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010). Here, the ALJ considered all the evidence. (A.R. 16, 20). Further, GAF scores are subjective rather than objective assessments, and they are not entitled to any particular weight. "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky v. Commissioner*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social

and occupational functioning."[6]  *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).  "Significantly, the SSA has refused to endorse the use of the GAF scale[.]"  *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).

Plaintiff argues that the ALJ's factual finding regarding his RFC should have included more significant limitations regarding his use of his arms and hands.  It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in his favor.  His burden on appeal is much higher.  He must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."  *Peterson v. Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014).  Dr. Jacobson found that plaintiff's muscle strength was intact, but mildly weakened in the bilateral upper extremities.  Plaintiff's grip strength was "normal" and he had "full dexterity."  (A.R. 351-54).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston v. Commissioner*, 245 F.3d at 534.  The ALJ's finding that plaintiff retained the RFC for a limited range of light work (A.R. 20) is supported by more than substantial evidence.

---

[6]"[T]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale."  *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at * 8 (N.D. Ohio Aug. 21, 2014); *see Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at * 23 n. 9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool."). " 'It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice.' "  *Brown v. Colvin*, No. 12-513, 2013 WL 6039018, at * 7 n. 3 (E.D. Wash. Nov. 14, 2013) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013)); *see Anderson v. Colvin*, No. 13-C-788, 2014 WL 5430275, at * 2 n.6 (E.D. Wisc. Oct. 25, 2014).  "Moreover, a GAF score reflected an individual's functioning at a particular moment in time; one score was generally not helpful in determining whether Plaintiff's alleged impairment lasted at least 12 months, as is required to be considered disabled.  *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a)."  *Davis v. Commissioner*, 2014 WL 4182737, at * 8.

**2.**

Plaintiff argues that the ALJ committed reversible error by not applying a higher age category to his claim for SSI benefits. (Plf. Brief at 17-21; Reply Brief at 6-7). Section 416.963(b) states that the age categories will not be mechanically applied in a borderline situation:

> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 416.920(g)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b). "Nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v. Commissioner*, 539 F.3d 395, 399 (6th Cir. 2008). Plaintiff's claim for SSI benefits did not present a "borderline" situation. He was not "within a few days" of reaching an older age category. He did not reach the category of a person of advanced age under 20 C.F.R. § 416.963(e) until five months after the ALJ entered his decision. Five months is more than "a few months." *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) (collecting cases). "The fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be moved mechanically to the next age category whenever h[is] chronological age is close to that category." *Van der Maas v. Commissioner,* 198 F. App'x. 521, 528 (6th Cir. 2006); *see Caudill v. Commissioner*, 424 F. App'x 510, 516-18 (6th Cir. 2011).

## **Conclusion**

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.


Dated:   November 14, 2014             /s/  Phillip J. Green
                                       United States Magistrate Judge